GRANNEN, APPELLEE, *v.* EY, APPELLANT. █

[Cite as Grannen v. Ey (1974), 44 Ohio App. 2d 55.]

(No. C-74275—Decided November 18, 1974.)

*Messrs. Beirne & Wirthlin,* for appellee.
*Messrs. Porter & McKinney,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket and journal entries; the original papers and pleadings from the Court of Common Pleas of Hamilton County, probate division; the transcript of the proceedings; the assignments of error; and the briefs and arguments of counsel.

The cause was heard below on a Complaint filed by the guardian of the person and estate of an incompetent, pursuant to R. C. 2109.50, which alleges that the defendant, the appellant herein, concealed, appropriated or conveyed away

money belonging to the estate of the incompetent. The complainant specified accounts in named financial institutions in approximate amounts, as well as identifying bonds, and set forth proceeds accruing from a veteran's insurance policy.

The plaintiff, the appellee herein, was appointed by the probate court as guardian of the person and estate of his wife on April 18, 1972. Thereafter, the guardian made a demand upon the defendant, a brother of the incompetent ward, that certain assets belonging to her be delivered to him as her guardian. After a lapse of some time, the defendant informed the guardian that he possessed but $13 of the ward's estate. Such report precipitated the filing of the Complaint with its essential allegations that assets far in excess of such sum were being withheld.

William and Margaret Grannen were married in April 1953, and lived together continuously thereafter. At the time of the marriage Margaret was the widow of a soldier who lost his life in the invasion of France in 1944, and had been employed before and continued to be so after the wedding. However, during their life together, William and Margaret lived on the income earned by William, an attorney, and Margaret's salary, as well as other income, was banked in her own accounts. Margaret Grannen added the name of her mother to these accounts. Her mother made her home with Margaret and William after her husband's death in 1953.

Beginning in 1965 or 1966, Margaret began to experience a short term memory loss, and thereafter other indicia of organic mental disability began to manifest themselves. By late 1968, Margaret no longer was able to manage her own checking accounts. Margaret's mother died in October, 1969, and several of the savings accounts were closed and new accounts opened in the joint names of Margaret and the defendant.

A number of physicians were consulted and the ultimate diagnosis was that Margaret was suffering from an hereditary brain disorder in which the cerebral arteries harden early in adult life, followed by a gradual physical

and mental deterioration over a period of from four to ten years, when death is anticipated. At the time of the proceedings below, Margaret was a patient in a private facility where the full care she required was afforded at a cost of some $900 per month and was described as being completely helpless.

It is manifest from the record that the proceeding below was not summary; rather, it was conducted as an adversary trial and the parties were afforded a full opportunity to present and establish their opposing contentions. In the course of the proceeding, defendant admitted that he had made no contribution to any of the accounts, or to the sources of any of the funds involved. Defendant stated he had "concealed" assets of Margaret Grannen after William had been appointed her guardian because "it was none of his [William's] business."

Essentially, the defendant asserts ownership of all of of the disputed monies and assets by virtue of a gift of them from his sister. He testified that, early in 1970, Margaret expressed a desire to divest herself of all interest in the various accounts and directed him to close them and reinvest the funds as he saw fit. Therefore, according to his testimony, he closed the accounts and purchased "tax-free municipal bonds" over which he exercised exclusive control. We find as an exhibit in the case a paper entitled "Certificate of Transfer of Personal Property" signed on September 21, 1970, by Margaret Grannen. Defendant presented this paper to his sister and the evidence is that she signed it in the presence of two witnesses, present at the request of defendant, one of whom was a business acquaintance of the defendant. At the time of the signing, defendant testified that he gave his sister one dollar to augment the "other good and valuable considerations" which consisted of the care and attention he had given his sister before the signing. Defendant's claim of ownership rests in part upon this document.

At the conclusion of the trial, the court found the defendant "guilty of concealing, appropriating or conveying away money belonging to the estate of the incompetent."

58

It ordered the defendant to return to the guardian the assets of the incompetent totalling $88,008.08, together with a ten per cent penalty and interest, and rendered judgment in the sum of $119,017.57.

Defendant has assigned the following errors:

"1. The court erred in finding defendant guilty of concealing, appropriating, or conveying away non-existing assets.

"2. The court erred in adjudicating contractual rights in a proceeding under Sec. 2109.50 of the Ohio Revised Code.

"3. The court erred in admitting over objection evidence of the ward's mental capacity prior to the appointment of a guardian.

"4. The court erred in determining that it had jurisdiction under Sec. 2109.50 of the Ohio Revised Code to hear and decide the issues involved.

"5. The judgment is not sustained by the evidence and is against the manifest weight of the evidence.

"6. The judgment is contrary to law."

The argument by which defendant seeks to maintain the initial assignment of error is that R. C. 2109.50 must be held to provide only a summary means, inquisitional in nature, to recover the specific property or the proceeds or value thereof, title to which was in this incompetent ward when her guardian was appointed, or to recover assets belonging to her trust estate concealed, taken or disposed of after the appointment of the fiduciary. To such effect, defendant cites *In re Black,* 145 Ohio St. 405. He urges that here the guardian is improperly seeking a reconciliation of transactions between the defendant and the ward because a proceeding under R. C. 2109.50 must be limited to events occurring on or after the date of the appointment of the guardian and cannot serve as a substitute for a civil action to recover a judgment for money owing to a guardian. In this latter respect, defendant cites *Goodrich* v. *Anderson,* 136 Ohio St. 509, and contends that the trial court lacked jurisdiction to hear and determine the issues broached by the pleadings and the evidence.

In the opinion which constitutes a part of the record and which the court declared should be considered findings of fact and conclusions of law within the purview of Civil Rule 52, we find the declaration that the court was convinced that this defendant was aware of his sister's deteriorating mental condition during the period when he undertook to act as her financial advisor. Accordingly, the court found, specifically, that this defendant, being aware of his sister's infirmity, "deliberately used her weakness to obtain control of the funds."

At this juncture, we note that the court's findings that defendant exploited his sister are fully supported by substantial and probative evidence. Indeed, defendant admits currently using some of the money for his own support and maintenance, while arguing that he is holding these assets in trust for the benefit of the incompetent and, thus, is immune from the sanctions provided by R. C. 2109.50.

Because we are convinced by the record, just as the trial court was by the evidence, that Margaret Grannen's mental faculties were seriously impaired to the knowledge of her brother when he gained possession of her property, we can distinguish this case from that before the court in *Black, supra. Black,* unlike this case, involved a transfer because of physical impairment by a mentally sound paralytic prior to the appointment of a guardian. To apply the rule in *Black* blindly in every instance would be, as was noted in the opinion of *In re Webb,* 18 Ohio App. 2d 287 at 302, to "ignore the realities of a situation" such as that before us, where the unconscionable advantage which a brother has taken of a stricken sister is so starkly clear.

The case at bar can be differentiated from *Goodrich, supra,* because here the defendant openly admits that he concealed assets obtained from the incompetent after the appointment of her guardian. The dissent in *Goodrich,* penned by Chief Justice Weygandt and concurred in by Judge Day, is visionary in scope and contains portents of what the court below did in employing R. C. 2109.50 coupled with R. C. 2101.24, to provide an "effective, alternative remedy for the discovery and recovery of assets of

an estate." See, dissenting opinion, Weygandt, C. J., *Goodrich* v. *Anderson, supra* at 513.

R. C. 2101.24 provides, in pertinent part:

"The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

This is consonant with the modern and prevailing view that the ends of justice are expedited and best served by the disposition of as many issues as is possible in a single proceeding. Of course, this assumes that due process of law is observed in the proceeding. Beyond the attack on the jurisdiction of the court below, there is no assertion that defendant was denied due process of law, nor are we able to discern anything save circumspect behavior by the trial judge in his efforts to afford a full, open and adversary hearing.

Defendant contends that contractual rights may not be adjudicated in a proceeding under R. C. 2109.50 and that the court was barred from disturbing the agreements between the several financial institutions and the joint depositors—i. e., the defendant and the ward—as well as negating the effect of the "Certificate of Transfer of Title of Personal Property."

It is clear from the record that the aged mother of both Margaret and this defendant lived with and was cared for by Margaret and William Grannen. Defendant admittedly did not contribute to her support. It is both apparent from the testimony and reasonable to believe that the name of William Grannen did not appear on the accounts Margaret and her mother maintained because the accounts were intended to provide the mother with a source of income if Margaret predeceased her, a device at once convenient and practical. The defendant's name was added because Margaret and William were fond of travel and the device of joint account permitted the defendant to have ready access, if such need arose, to funds for the mother's care when Margaret and William were away from the home.

We are convinced that paragraph two of the syllabus

of *Fecteau* v. *Cleveland Trust Co.*, 171 Ohio St. 121, provides the authority for the court below in this instance to determine the intent of the parties in establishing survivorship accounts:

"A petition and complaint comes within the provisions of Section 2109.50. Revised Code (Recodification Act of 1953), where it alleges facts showing that the person filing it is a person interested in the estate of a decedent, and where it contains the further allegations that moneys deposited in a bank during the lifetime of the decedent in the joint names of the decedent and another with right of survivorship were so deposited for convenience only and in reality were the sole property of the decedent and belong in his estate, and that such other unauthorizedly withdrew the moneys from the account during the lifetime of the decedent and deposited the same in an account in such other's name where such moneys remain."

The authority of *Fecteau* is even more compelling when assessed in a fact situation which, as here, includes evidence which compels the conclusion that the one who withdrew the moneys did so with the knowledge that his joint depositor was, medically, incompetent. The accuracy of the diagnosis arrived at by the physicians is pointed up by the fact that, now, the ward is helpless.

In his third assignment of error, defendant challenges the authority of the probate court to receive evidence of the ward's mental condition prior to the adjudication of her incompetency. We restate that we find this case distinguishable from *Goodrich, supra*, and that consequently we are not obliged to apply the law of that case here. Instead, the rule in the case of *In re Sanderson*, 64 Ohio App. 177, appears to us to be dispositive of the question raised by the third assignment of error.

The syllabus in *Sanderson* reads:

"Where the guardian of an incompetent filed, in the Probate Court, on July 7, 1938, a complaint against A, seeking to recover assets allegedly belonging to the guardianship estate, and A claimed to hold the assets by virtue of a trust created by the ward before the guardian was ap-

pointed, and the guardian claimed that his ward was incompetent to create the trust, the Probate Court, under the provisions of Section 10506-73, General Code, being the amendment of a former analogous section (114 Ohio Laws, 320, 379), and a part of the Probate Code, had jurisdiction to try the issue as to the title of said assets.''

This, we think, harmonizes with the modern view that as many issues as possible be disposed of in a single proceeding.

To summarize, we hold that the probate court did not err in finding that it had jurisdiction, it did not err in receiving evidence of the mental capacity of the ward prior to the appointment of the plaintiff as guardian, it did not err in adjudicating contractual rights in the proceeding, and finding defendant guilty of concealing, appropriating or conveying away assets of the ward. Such is sustained by substantial and probative evidence. Hence, the judgment and order below are neither contrary to law nor against the manifest weight of the evidence. We find, for the reasons given in the body of this decision, that none of the assignments of error are well taken.

The sole point raised by defendant which has validity is the protest that the court found him to be guilty of misappropriating the last eight checks received by the ward from the Veterans' Administration in 1972. These checks were in the amount of $40.10 each. This oversight might well, in view of the total amount of the peculations, be disposed of by the application of the maxim *de minimis non curat lex*, but in total fairness to the defendant the judgment should be reduced by the total sum of the eight checks and the interest assessed thereupon.

The judgment, as so diminished, is affirmed and this cause is remanded to the Probate Court of Hamilton County for further proceedings according to law.

*Judgment affirmed in part and reversed in part, and cause remanded.*

HESS, P. J., SHANNON and PALMER, JJ., concur.