Goldberg, Appellee and Cross-Appellant, *v.* Maloney,
Judge, Appellant and Cross-Appellee.

[Cite as *Goldberg v. Maloney,* 111 Ohio St.3d 211, 2006-Ohio-5485.]

(No. 2006–0250—Submitted July 18, 2006—Decided November 8, 2006.)

**Per Curiam.**

{¶ 1} This is an appeal and cross-appeal from a judgment granting a writ of prohibition to prevent a probate judge from proceeding in a concealment action instituted under R.C. 2109.50. Because the probate judge does not patently and unambiguously lack jurisdiction to proceed in the concealment case, we reverse.

### Kish Concealment Action: 1999–2000

{¶ 2} On October 29, 1999, James B. Dietz, in his capacity as guardian of the estate of Michael James Kish ("Kish"), filed a complaint pursuant to R.C. 2109.50 in the Mahoning County Court of Common Pleas, Probate Division, for concealment of assets against appellee and cross-appellant, attorney Richard D. Goldberg. In the complaint, the guardian alleged the following.

{¶ 3} On October 30, 1970, the ward, Michael James Kish, was born. When Kish was still a minor, he suffered a football injury in the fall of 1987. Kish received treatment for the injury but developed an infection and ultimately experienced respiratory arrest, which resulted in anoxic encephalopathy. Kish became physically and mentally disabled and legally incompetent.

{¶ 4} On January 13, 1989, Goldberg represented Kish and his father, Michael Joseph Kish, and filed a medical-malpractice case on their behalf against various physicians and health-care providers in the Mahoning County Court of Common Pleas. No guardianship was established at the time of filing or during the case, although Kish had reached the age of majority. The lawsuit was eventually settled for $1,773,917. Of this amount, $773,917 was used to purchase annuities to be paid to Kish. The defendants paid the remaining $1,000,000 in cash, and Goldberg retained the money except for $20,761.29 that he paid to the State Teachers Retirement System on behalf of Kish's father. Goldberg accounted for

another $31,544.95 as reimbursement to him for costs and expenses that he had allegedly advanced.

{¶ 5} The primary settlement agreement with the health-care providers was signed by Kish's father even though Kish had already reached the age of majority. Other settlement agreements purported to be between the health-care providers and Kish individually, but Kish did not sign the agreements and he lacked the cognitive capacity to understand them. On these latter agreements, Kish's signature was forged.

{¶ 6} On October 7, 1999, Dietz was appointed as Kish's guardian. Goldberg thereafter gave the guardian a copy of a July 12, 1998 fee agreement signed by Kish's father providing for an attorney fee of 50 percent of any amount recovered by compromise or settlement.

{¶ 7} In May 2000, appellant and cross-appellee, Judge Timothy P. Maloney of the probate court, received evidence in the concealment case and took the matter under advisement.

## Attorney Disciplinary Proceedings

{¶ 8} On September 10, 1999, during certain criminal actions against Goldberg, we suspended his license to practice law in Ohio for an indefinite period. *In re Goldberg* (1999), 86 Ohio St.3d 1480, 716 N.E.2d 213. On May 3, 2000, we denied Goldberg's motion to resign from the practice of law. *In re Resignation of Goldberg* (2000), 88 Ohio St.3d 1504, 727 N.E.2d 926.

{¶ 9} On February 27, 2002, we found that Goldberg had misappropriated over $742,000 in funds paid in a wrongful-death action, defrauded an estate of $400,000 when he represented the estate in a medical-malpractice action, made false representations to a court in a criminal case arising from his illegal conduct, and failed to make restitution to all of the victims of his crimes. *Disciplinary Counsel v. Goldberg* (2002), 94 Ohio St.3d 337, 763 N.E.2d 119. We disbarred Goldberg from the practice of law in Ohio.

## Bankruptcy and Other Proceedings

{¶ 10} On January 30, 2001, Goldberg filed for bankruptcy protection in the United States District Court for the Northern District of Ohio.

{¶ 11} On May 3, 2000, Judge Maloney issued contempt orders in four separate concealment cases and sentenced Goldberg to 21 months in jail. Following the exhaustion of his direct appeals, a federal district court granted Goldberg relief in habeas corpus. On September 5, 2001, we granted Goldberg a writ of prohibition to prevent Judge Maloney and the probate court from issuing prejudgment attachment orders in certain concealment proceedings. *State ex rel. Goldberg v. Mahoning Cty. Probate Court* (2001), 93 Ohio St.3d 160, 753 N.E.2d 192.

{¶ 12} In February 2005, Goldberg entered into a plea agreement with the state of Ohio in a criminal case in which he agreed to make restitution. As part of the agreement, the guardian in the Kish case agreed to the restitution amount of $60,733.26.

### Kish Concealment Action: 2005

{¶ 13} As a result of the February 2005 plea agreement, Kish's guardian notified Judge Maloney on March 16, 2005, of the agreement and asked the probate court to ratify it. On March 25, 2005, however, Judge Maloney denied the guardian's application because of the pending concealment action involving Kish's estate:

{¶ 14} "There is yet a related concealment action pending in this Court * * *. That complaint, brought by Attorney Dietz as Guardian of the Estate of Michael James Kish, is as yet unresolved. It is unresolved principally as Goldberg invoked his Fifth Amendment privilege [against self-incrimination]. However and based upon information supplied by the Applicant, Attorney Dietz, it would appear that Goldberg has since waived his Fifth Amendment privilege, as well as other rights, and entered a plea of guilty to the charges pertaining to the instant Ward, Michael James Kish. This Court's review of its records indicates that Richard Goldberg accepted $1 million dollars that he has yet to account for to this Court. This Court is not, therefore, inclined to ratify his late offering of $60,733.26 in satisfaction of the outstanding sums which may be due in this case."

{¶ 15} Shortly thereafter, on March 29, 2005, in the Kish concealment case, Judge Maloney issued a citation ordering Goldberg to appear before the probate court on April 6, 2005, "to be examined under oath touching upon the matters set forth within the Complaint, and for such other proceedings and process as may be authorized by law or required in the premises." There had been no previous activity in the concealment case since Judge Maloney's May 2000 entry taking the case under advisement.

### Prohibition Case

{¶ 16} On April 1, 2005, Goldberg filed a complaint in the Court of Appeals for Mahoning County for a writ of prohibition to prevent Judge Maloney from proceeding with his examination on April 6, 2005, and to quash the citation. In his complaint, Goldberg claimed that Judge Maloney patently and unambiguously lacked jurisdiction to proceed in the underlying concealment action involving the Kish guardianship because (1) Judge Maloney lacked authority to approve or ratify the plea agreement between Goldberg and the state, (2) Judge Maloney had already closed the evidentiary record in May 2000, and (3) Goldberg's filing of a bankruptcy petition automatically stayed the concealment case. On April 5,

2005, the court of appeals granted an alternative writ, which prohibited Judge Maloney from conducting the hearing scheduled for April 6.

{¶ 17} Judge Maloney moved to dismiss the prohibition case, in part based upon R.C. 2109.50 and 2109.52 as authorizing him to proceed in the concealment case. In his memorandum in opposition, Goldberg reasserted the automatic bankruptcy stay as a basis for his prohibition claim, but also raised two new claims. For his new claims, Goldberg argued that (1) because the disputed attorney fees were provided to him in 1992 pursuant to a fee agreement before the ward was adjudicated incompetent and the guardian was appointed, the concealment action was outside the scope of the probate court's jurisdiction under R.C. 2109.50 et seq. and (2) proceeding with the concealment case after a sentence had been imposed in the related criminal matter violated the constitutional prohibition against double jeopardy. Judge Maloney filed a reply challenging Goldberg's claims.

{¶ 18} On December 23, 2005, the court of appeals granted a writ of prohibition to prevent Judge Maloney from proceeding in the concealment action.

{¶ 19} This cause is now before the court upon Judge Maloney's appeal as of right and Goldberg's cross-appeal.

{¶ 20} Judge Maloney asserts that the court of appeals erred in granting the writ of prohibition to prevent him from proceeding in the concealment action brought by Kish's guardian. In order to be entitled to the writ, Goldberg must establish that (1) Judge Maloney is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Douglas v. Burlew,* 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, ¶ 9. It is uncontroverted that Judge Maloney is about to exercise judicial power because without the writ, he will conduct further proceedings in the underlying concealment case.

{¶ 21} For the remaining requirements, " '[i]n the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging that jurisdiction has an adequate remedy by appeal.' " *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 8, quoting *State ex rel. Nalls v. Russo,* 96 Ohio St.3d 410, 2002-Ohio-4907, 775 N.E.2d 522, ¶ 18. Therefore, without a *patent and unambiguous* lack of jurisdiction, there is generally no entitlement to a writ of prohibition to prevent a trial court's exercise of jurisdiction. *State ex rel. Brady v. Pianka,* 106 Ohio St.3d 147, 2005-Ohio-4105, 832 N.E.2d 1202, ¶ 9–10.

{¶ 22} In the proceedings below and in this appeal, Goldberg ultimately settled on the following grounds for his prohibition claim: (1) the concealment action is

outside the scope of the probate court's jurisdiction because the attorney fees were given to Goldberg before the guardianship proceeding commenced and (2) the concealment action was automatically stayed by Goldberg's filing of bankruptcy. The first ground provided the basis for the court of appeals' judgment granting the writ. The second ground was relied upon by one of the court of appeals judges who concurred in the issuance of the writ and is also the basis for Goldberg's cross-appeal. These claims are next discussed.

### Preguardianship Transactions

{¶ 23} Probate courts are courts of limited jurisdiction, and probate proceedings are thus restricted to those actions permitted by statute and by the Ohio Constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708, paragraph one of the syllabus. Judge Maloney is exercising jurisdiction over the concealment action pursuant to R.C. 2109.50 to 2109.56 and has plenary authority under R.C. 2101.24(C). An R.C. 2109.50 proceeding for the discovery of concealed or embezzled assets of an estate is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there. *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraphs one and two of the syllabus.

{¶ 24} "In determining the scope of a concealment proceeding instituted under R.C. 2109.50, we must first look at its language, reading words and phrases used in context and construing them according to the rules of grammar and common usage." *State ex rel. Goldberg v. Mahoning Cty. Probate Court* (2001), 93 Ohio St.3d 160, 163, 753 N.E.2d 192.

{¶ 25} R.C. 2109.50 authorizes proceedings in a probate court proceeding against persons suspected of concealing, embezzling, or conveying away estate assets and permits an examination of persons on anything touching upon the matter of the concealment complaint:

{¶ 26} "Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint."

{¶ 27} R.C. 2109.52 empowers the probate court to conduct a hearing in the concealment proceeding at which the court may determine questions of title concerning the allegedly concealed, embezzled, or conveyed estate assets, to determine whether the person accused is guilty and, if so, to enter judgment against the person found guilty for the amount of the money or value of assets with a ten percent penalty:

{¶ 28} "When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine, by the verdict of a jury if either party requires it or without if not required, whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys, chattels, or choses in action of the trust estate. If such person is found guilty, the probate court shall assess the amount of damages to be recovered or the court may order the return of the specific thing concealed or embezzled or may order restoration in kind. *The probate court* may issue a citation into any county in this state, which citation shall be served and returned as provided in section 2109.50, requiring any person to appear before it who claims any interest in the assets alleged to have been concealed, embezzled, conveyed, or held in possession and at such hearing *may hear and determine questions of title relating to such assets.* In all cases, except when the person found guilty is the fiduciary, the probate court shall forthwith render judgment in favor of the fiduciary or if there is no fiduciary in this state, the probate court shall render judgment in favor of the state, against the person found guilty, for the amount of the moneys or the value of the chattels or choses in action concealed, embezzled, conveyed away, or held in possession, together with ten per cent penalty and all costs of such proceedings or complaint * * *." (Emphasis added.)

{¶ 29} In addition, pursuant to R.C. 2101.24(C), "[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."

{¶ 30} The court of appeals held that Judge Maloney patently and unambiguously lacked jurisdiction over the Kish concealment action because "if a defendant takes a person's money before death or before institution of a guardianship, then a concealment action is not the appropriate remedy because the money was not taken from the estate" and "any money taken by Goldberg in exchange for his legal services would not constitute estate funds as they were never passed through an estate." 2005-Ohio-7110 at ¶ 9 and 13. The court of appeals concluded that the Kish concealment action was improper and that Judge Maloney could not "adjudicate rights under a private contract more appropriately brought in a common pleas court." Id. at ¶ 13.

{¶ 31} The court of appeals erred in so holding. In *Fecteau v. Cleveland Trust Co.* (1960), 171 Ohio St. 121, 12 O.O.2d 139, 167 N.E.2d 890, we held that a concealment action pursuant to R.C. 2109.50 and 2109.52 is appropriate to determine the allegation that a person had, without authorization, withdrawn funds belonging to another person before his death although the dispute arose out of a contractual matter—the creation of a bank account:

{¶ 32} "In the instant case, the petition and complaint flatly alleges that the savings and checking accounts were the exclusive property of Peter E. Fecteau, and that only for convenience was the name of June A. Larkin added with the provision that 'either may draw—balance at death of either, payable to survivor.' The allegation is further made that, while Peter E. Fecteau was still alive and helpless, June A. Larkin unauthorizedly withdrew these funds belonging wholly to Peter E. Fecteau from the accounts and deposited them in an account in her own name where such moneys remain. In our opinion, these allegations state a case within the quoted provisions of Section 2109.50, Revised Code. Whether plaintiff can prove her charges is another matter of no present concern." Id., 171 Ohio St. at 125, 12 O.O.2d 139, 167 N.E.2d 890.

{¶ 33} In *Fecteau,* we recognized that concealment actions under R.C. 2109.50 and 2109.52 could be applicable to recover certain assets wrongfully concealed, embezzled, or conveyed away *before* the creation of the estate.

{¶ 34} Similarly, other courts have acknowledged that "although property that passed by inter vivos gift or transaction is not property of the estate retrievable by an executor under R.C. 2109.50, the probate court can determine that the inter vivos gift or transaction was invalid, in which case the property is an asset of the estate retrievable by R.C. 2109.50." *Harrison v. Faseyitan,* 159 Ohio App.3d 325, 2004-Ohio-6808, 823 N.E.2d 925, ¶ 36, citing *Rudloff v. Efstathiadis,* Trumbull App. No. 2002–T–0119, 2003-Ohio-6686, 2003 WL 22931382 (concealment action was appropriate to recover funds passed to a third party by inter vivos transaction where the validity of the underlying transfer is challenged); see, also, *In re Estate of Kelsey,* 165 Ohio App.3d 680, 2006-Ohio-1171, 847 N.E.2d 1277, ¶ 33, citing *Rudloff* ("Where, as here, a dispute exists regarding title, the probate court is not deprived of jurisdiction to resolve the dispute * * * ").

{¶ 35} "[A] plaintiff has stated an actionable cause under R.C. 2109.50 if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it." *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 407, 629 N.E.2d 500. Courts have consequently held that a probate court "may properly investigate and adjudicate all matters substantially related to the guardianship," including transactions occurring before the guardianship proceedings began. *In re Guardianship of Alberts* (Apr. 26, 1989), Summit App. No. 13780, 1989 WL

41523, *2; see, also, *Grannen v. Ey* (1974), 44 Ohio App.2d 55, 73 O.O.2d 52, 335 N.E.2d 735 (probate court had jurisdiction in a concealment action to inquire into an incompetent's financial transactions before the appointment of a guardian where the incompetent's mental capacity at the time of the transactions is questioned by the guardian).

{¶ 36} As noted previously, R.C. 2109.52 expressly authorizes probate courts in concealment proceedings to resolve "questions of title" for allegedly concealed, embezzled, or conveyed assets. See, also, *State ex rel. Lipinski v. Cuyahoga Cty. Common Pleas Court, Probate Div.* (1995), 74 Ohio St.3d 19, 22, 655 N.E.2d 1303 ("a declaratory judgment action may be brought in the probate court to determine the validity of *inter vivos* transfers where the property transferred would revert to the estate if the transfers are invalidated"). The cases permitting probate courts to determine the validity of preguardianship or predeath transactions have been held to be "consonant with the modern and prevailing view that the ends of justice are expedited and best served by the disposition of as many issues as is possible in a single proceeding." *Grannen,* 44 Ohio App.2d at 60, 73 O.O.2d 52, 335 N.E.2d 735; see, also, *Alberts,* at *2.

{¶ 37} Although other courts have at times held otherwise, see, e.g., *Harpster v. Castle* (June 28, 1993), Ashland App. No. CA 1022, 1993 WL 274296, *1, the existence of the cases previously cited establishes at least that Judge Maloney did not patently and unambiguously lack jurisdiction to determine whether the preguardianship transactions in the Kish case, including settlement agreements that the guardian alleged Kish never signed, wrongfully transferred assets that would revert to the estate if invalidated. See *State ex rel. Lewis v. Moser* (1995), 72 Ohio St.3d 25, 28, 647 N.E.2d 155 (court not persuaded that probate court patently and unambiguously lacks jurisdiction so as to warrant issuance of extraordinary writ where "parties cite competent authority on both sides of this issue").

{¶ 38} Nor do the cases cited by the court of appeals warrant a different result. The court of appeals cited *In re Estate of Black* (1945), 145 Ohio St. 405, 31 O.O. 31, 62 N.E.2d 90, *In re Estate of Leiby* (1952), 157 Ohio St. 374, 47 O.O. 265, 105 N.E.2d 583, and *Harrison,* 159 Ohio App.3d 325, 2004-Ohio-6808, 823 N.E.2d 925, in support of its holding that Judge Maloney patently and unambiguously lacked jurisdiction over the Kish concealment action because it involved preguardianship transactions. In *Black,* at paragraph four of the syllabus, we emphasized that a concealment action "may not be successfully pursued where it appears from the evidence that title to such property had been transferred by the ward, *pursuant to a valid agreement,* prior to the guardianship." (Emphasis added.) Unlike the concealment case in *Black,* the underlying concealment action here alleges that there was no valid agreement transferring Kish's assets to Goldberg. In *Leiby,*

there was no evidence that the decedent owned the funds in question. 157 Ohio St. at 383, 47 O.O. 265, 105 N.E.2d 583. And *Harrison* recognized that a probate court could determine the validity of a transaction before the creation of the estate. *Harrison*, 159 Ohio App.3d 325, 2004-Ohio-6808, 823 N.E.2d 925, ¶ 36.

{¶ 39} Based on the foregoing, the court of appeals erred in holding that the probate court patently and unambiguously lacked jurisdiction to proceed in the underlying concealment action and that a writ of prohibition was therefore warranted.

### Cross–Appeal:  Automatic Stay

{¶ 40} Goldberg argues in his cross-appeal that even if the court of appeals erred in granting the writ of prohibition on the specified basis that the probate court lacked jurisdiction over the concealment action because no estate assets were involved, the writ was appropriate on the alternate basis that his bankruptcy action stayed the probate court from proceeding in the concealment action.

{¶ 41} Section 362 of the Bankruptcy Code, Section 362(a), Title 11, U.S.Code, provides a general automatic stay for certain proceedings against the debtor who files a bankruptcy petition.  Section 362(b)(1), however, provides an exception to the general stay for "the commencement or continuation of a criminal action or proceeding against the debtor."

{¶ 42} A concealment action under R.C. 2109.50 is "quasi criminal in nature." *Estate of Fife*, 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraph one of the syllabus; *Goldberg*, 93 Ohio St.3d at 164, 753 N.E.2d 192 ("A concealment action under R.C. 2109.50, however, is, as appellants concede, not a civil action. Instead, it is a *quasi-criminal* proceeding * * * " [emphasis sic] ).

{¶ 43} Several bankruptcy courts have held that the automatic-stay exception for criminal actions and proceedings encompasses quasi-criminal actions.  See, e.g., *In re Nelson* (Bankr.D.Kan.2005), 335 B.R. 740, 750–752; *In re Cuevas* (Bankr.D.N.J.1997), 205 B.R. 457, 460; *In re 1820–1838 Amsterdam Equities, Inc.* (S.D.N.Y.1996), 191 B.R. 18, 21; *In re Davis* (D.Del.1982), 18 B.R. 701, 703. The bankruptcy court is a better forum for determining whether the stay applies. See, e.g., *In re Batt* (Bankr.N.D.Ohio, 2005), 322 B.R. 776, 780 (in determining whether the Section 362(b)(1) exception applies, the burden is upon the debtor to prove the inapplicability of the exception).

{¶ 44} Based on the foregoing precedent, extraordinary relief in prohibition is not warranted on this basis because the automatic-stay provision of Section 362(a) does not patently and unambiguously divest Judge Maloney of jurisdiction to proceed in the underlying concealment action.  Therefore, Goldberg's cross-appeal lacks merit.

## Conclusion

{¶ 45} Based on the foregoing, Judge Maloney and the probate court do not patently and unambiguously lack jurisdiction to proceed in the concealment action, and Goldberg has an adequate remedy by way of appeal to raise his claims. "We need not rule on the merits of [these jurisdictional claims], because our duty is limited to determining whether jurisdiction is patently and unambiguously lacking." *State ex rel. Florence v. Zitter*, 106 Ohio St.3d 87, 2005-Ohio-3804, 831 N.E.2d 1003, ¶ 28. Therefore, the court of appeals erred in granting the requested extraordinary relief in prohibition. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Maguire and Schneider, L.L.P., Karl H. Schneider, and Brian E. Dickerson; and Martin Yavorcik, for appellee and cross-appellant.

Montgomery, Rennie & Jonson, Ralph E. Burnham, and Hope A. Smith, for appellant and cross-appellee.