[Cite as *Barber v. Williamson*, 2012-Ohio-4925.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

THELMA BARBER,                          :
as Guardian of Nettie Mullins,          :
                                        :
    Plaintiff-Appellee,                 :     Case No. 11CA3265
                                        :
    vs.                                 :     **Released: October 16, 2012**
                                        :
RICK WILLIAMSON, et al.,                :
                                        :     <u>DECISION AND JUDGMENT</u>
    Defendants-Appellants.              :     <u>ENTRY</u>
                                        :

<u>APPEARANCES</u>:

Steven C. Newman, Chillicothe, Ohio, for Appellants.

Thomas M. Spetnagel, Chillicothe, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellants Rick and Jerry Williamson appeal the decision of the Ross County Court of Common Pleas granting judgment in Appellee' favor for breach of fiduciary duty in the amount of $66,956.96. Appellants raise five assignments of error, arguing: 1) the trial court lacked jurisdiction to continue the action once an application for guardianship was filed in the probate court; 2) the court committed reversible error in not following In re Thompson, 66 Ohio St.2d 433; 3) the court erred in finding that a fiduciary relationship existed between parent and children (her sons, the Appellants), upon failing to find fraud, coercion, or undue

influence; 4) the court erred in determining the donor incompetent at the time of transfer based solely upon the doctor's opinions formulated months after the gift; and 5) the court erred in failing to find a present intention of the donor to relinquish ownership, dominion, and control of the property.

{¶2} Having reviewed the record, we find merit to Appellants' first assignment of error. The general division of the trial court was not the proper court for the action because the probate court had exclusive jurisdiction over the subject matter. Accordingly, we vacate the trial court's judgment and remand the cause for transfer to the probate court.

## FACTS

{¶3} Nettie Mullins ("Mullins") had six children from her first marriage: three daughters and three sons. Later Mullins remarried, but in 2008 she had started to display the signs of dementia.

{¶4} On January 22, 2009, Mullins took the contents of a savings account she held jointly with her husband and transferred the money into an account solely in her name. On February 26, 2009, Mullins withdrew $89,390.89 in cash from the new account. She met her three sons and allegedly took an unknown amount of the cash for herself, then she gave the rest to her sons and instructed them to "take care of her" with the money.

{¶5} The sons claimed they had not counted the money and initially placed the funds in a safety deposit box. They later removed it and distributed $5,000 to each of Mullins' children, save one, to whom they gave $1,000. They used some money to place Mullins in an assisted living community. Mullins had occasionally asked for small sums of cash, which her sons gave her. Another portion of the money paid for Mullins' husband's funeral after he passed in March 2009.

{¶6} The sons, however, also believed Mullins had permitted them to spend the money in their possession however they wished, which they did. Mullins also transferred title of her 2006 Chevy Impala to one of her sons for no consideration. Neither of the two defendant-sons was able to definitively say how much money Mullins gave them, nor could they provide an accounting for how they spent those funds.

{¶7} In April 2009, Mullins executed a power of attorney naming two of her daughters as attorneys in fact. The daughters initiated the instant action on Mullins' behalf against sons Jerry and Rick Williamson, alleging they took advantage of Mullins and she had either intended the money to be held in trust for her benefit, or she was incompetent to gift the money to them. The daughters filed claims against the defendant-sons for breach of fiduciary duty, conversion, undue influence, fraud or coercion, and requested a declaratory judgment and an accounting, as well as money damages.

{¶8} While the action was pending in the general division, the third daughter instituted proceedings in the probate court to appoint a guardian for Mullins due to her diminished cognitive functions. The probate court determined Mullins was incompetent and appointed the third daughter, Thelma Barber, as Mullin's guardian on July 8, 2010. The trial court's general division then substituted Barber, as Mullins' guardian, as the plaintiff in the instant action and the case proceeded to a trial to the court.

{¶9} At the close of evidence, the trial court gave its ruling from the bench. The court found Mullins did not possess the donative intent to gift the money to her sons. (Tr. at 255.) It also determined Mullins was incompetent to make the transfers, both the January withdrawal from the joint account and the February cash withdrawal from her new account. (Tr. at 257.) Oddly though, the trial court determined Mullins had created a trust when she gave the money to the defendant-sons and told them to take care of her, rendering them fiduciaries.[1] (Tr. at 255-256.)

{¶10} The trial court held the defendant-sons had breached their fiduciary duty to Mullins when they spent the money on anything but her care. The court accounted for any monies the defendants had expended on Mullins' behalf, which was proper, and required the defendant-sons to repay the wrongfully expended or

unaccounted for balance, which came to $66,956.96. The court entered judgment against the defendant-sons in that amount, holding them jointly and severally liable. The defendant-sons now appeal.

ASSIGNMENTS OF ERROR

1. The trial court lacked jurisdiction to continue this action once an application for guardianship was filed in the probate court.

2. The court committed reversible error in not following In re Thompson, 66 Ohio St.2d 433.

3. The court erred in finding that a fiduciary relationship existed between parent and children (her sons, the Appellants), upon failing to find fraud, coercion, or undue influence.

4. The court erred in determining the donor incompetent at the time of transfer based solely upon the doctor's opinions formulated months after the gift.

5. The court erred in failing to find a present intention of the donor to relinquish ownership, dominion, and control.

I. Jurisdiction

{¶11} In their first assignment of error, Appellants argue the trial court lacked jurisdiction to continue the action once Barber filed an application for guardianship in the probate court. While we do not believe the probate court

obtained jurisdiction as soon as Barber filed the application for guardianship, we do believe this action was within the probate court's exclusive jurisdiction because it "touched upon the guardianship."

## A. Standard of Review

{¶12} "The existence of the trial court's subject-matter jurisdiction is a question of law that we review de novo." *Yazdani–Isfehani v. Yazdani–Isfehani,* 170 Ohio App.3d 1, 2006-Ohio-7105, 865 N.E.2d 924, ¶ 20 (4th Dist.). "[L]ack of subject matter jurisdiction may be raised at any stage of a legal proceeding, including appeal." *Mock v. Bowen*, 6th Dist. No. L-91-210, 1992 WL 163959, *3 (July 17, 1992), citing *Fox v. Eaton Corp.*, 48 Ohio St.2d 236, 358 N.E.2d 536 (1976) (syllabus overruled on other grounds in *Manning v. Ohio State Library Bd.*, 62 Ohio St.3d 24, 577 N.E.2d 650 (1991)). "That is, subject matter jurisdiction cannot be waived and is the basis for a mandatory *sua sponte* dismissal by a court." *Mock* at *3, citing *State ex rel. Lawrence Development Co. v. Weir*, 11 Ohio App.3d 96, 463 N.E.2d 398 (10th Dist. 1983).

## B. Legal Analysis

R.C. 2101.24 provides:

> (A)(1) Except as otherwise provided by law, the probate
>
> court has exclusive jurisdiction:
>
> * * *

(e) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts;

* * *

(g) To make inquests respecting persons who are so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that they are unable to manage their property and affairs effectively, subject to guardianship;

* * *

(l) To render declaratory judgments, including, but not limited to, those rendered pursuant to section 2107.084 of the Revised Code;

* * *

(m) To direct and control the conduct of fiduciaries and settle their accounts;

* * *

(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly

before the court, unless the power is expressly otherwise
limited or denied by a section of the Revised Code.

{¶13} Civ.R. 73(B) provides, "Proceedings that are improperly venued shall be transferred to a proper venue provided by law * * *."

"At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction[.]" 2111.50(A)(1). *See, also, In re Guardianship of Jawisiak*, 64 Ohio St.3d 176, 180, 593 N.E.2d 1379 (1992) ("The court having jurisdiction of the guardianship matter is superior guardian, while the guardian is deemed to be an officer of the court."), citing *In re Clendenning*, 145 Ohio St. 82, 93, 60 N.E.2d 676 (1945). "The state's interest in the guardianship is effectuated by the extension of the probate court's jurisdiction to all matters 'touching upon the guardianship.'" *In re Guardianship of Jawisiak* at 180, citing *In re Zahoransky*, 22 Ohio App.3d 75, 488 N.E.2d 944 (8th Dist. 1985). Thus, the issue of jurisdiction turns upon whether Mullins' claims, brought by her guardian, "touch upon the guardianship."

{¶14} We have not previously addressed the issue of whether the probate court has exclusive jurisdiction over claims brought on behalf of the ward to recover assets that were allegedly wrongfully conveyed away or converted prior to the guardianship. We have, however, held the probate court has exclusive jurisdiction over declaratory actions brought to determine any questions arising out

of the administration of a decedent's estate. *Grimes v. Grimes*, 173 Ohio App.3d 537, 2007-Ohio-5653, 879 N.E.2d 247 (4th Dist.), at ¶ 17. In *Grimes*, the declaratory judgment action was properly before the probate court because the plaintiff sought to invalidate inter vivos transfers involving property that would revert to the estate if the transfers were deemed invalid. *Grimes* at ¶ 18-19. "'[T]he action related to the administration of the estate and is within the *exclusive* jurisdiction of the probate court.'" (Emphasis sic.) *Grimes* at ¶ 19, quoting *Mock*, 6th Dist. No. L-91-210, 1992 WL 163959, *3 (July 17, 1992).

{¶15} It follows then that when a guardian brings suit on behalf of the ward seeking a declaratory judgment invalidating pre-guardianship transfers involving property that would revert to the ward's estate if the court deems the transfers invalid, such a claim is within the probate court's exclusive jurisdiction because it "touches upon the guardianship." R.C. 2101.24(A)(1)(l); *In re Guardianship of Jawisiak. See*, *generally*, *Grimes*.

{¶16} Other courts have reached similar conclusions. In *Sayer v. Epler*, 121 Ohio App.3d 329, 332-333, 699 N.E.2d 1000 (5th Dist. 1997), the court held claims for concealing or having wrongfully conveyed away property of the estate inter vivos, pursuant to R.C. 2109.50, are within the probate court's jurisdiction because the property at issue would revert to the estate if the transfers were declared invalid. Even when a party seeks to enjoin the sale of property it believes

was wrongfully converted inter vivos from the decedent's estate, such a claim is within the probate court's exclusive jurisdiction and the probate court has the plenary power to fully dispose of the claim. *Bunting v. Estate of Bunting*, 5th Dist. Nos. 2008CA00173, 2008CA00199, 2009-Ohio-3136, at ¶ 13-15.

{¶17} Mullins' remaining claims are all merely alternate theories attempting to recoup the money the Appellants allegedly conveyed away from Mullins prior to the establishment of the guardianship. These too touch upon the guardianship because they attempt to recapture the ward's assets and are within the probate court's exclusive jurisdiction.

{¶18} Regarding Mullins' counterargument that the probate court lacks the ability to issue money judgments, we disagree. R.C. 2101.24(C) clearly gives the probate court plenary power at law and equity to dispose of any claim properly before it, which includes issuing money damages. Mullins has cited no section of the Revised Code that specifically denies or limits this power, nor have we found any.

{¶19} Moreover, *State ex rel. Lewis v. Moser*, 72 Ohio St.3d 25, 28-29, 647 N.E.2d 155 (1995) and *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, at ¶ 31-39 do not support her contention that a probate court lacks the ability to order money damages and a request for such divests the probate court of jurisdiction over an action. When determining whether the probate court

"patently and unambiguously lack[ed] jurisdiction" over actions seeking monetary damages, the Supreme Court noted in both cases there was case law on either side of the issue.

{¶20} In *Lewis*, the Court stated, "we are not convinced that the probate court so patently and unambiguously lacks jurisdiction over claims for breaches of fiduciary duties seeking monetary damages[.]" *Lewis* at 28. The Court even went on to suggest, in light of *Goff v. Ameritrust Co., N.A.*, 8th Dist. Nos. 65196, 66016, 1994 WL 173544 (May 5, 1994), that lower courts reevaluate their holdings finding the probate court had no jurisdiction under R.C. 2101.24 to award money damages. *Lewis* at 29. See, also, *In re Katherine Ewanicky*, 8th Dist. No. 81742, 2003-Ohio-3351, at ¶ 6-10 (holding the probate court properly adjudicated claims involving a ward's accounts and was within its jurisdiction and plenary powers even though claims sought monetary damages); Goldberg at ¶ 37 (probate court did not patently and unambiguously lack jurisdiction to determine whether pre-guardianship transfers were valid, where wrongfully transferred assets would revert to the ward's estate).

{¶21} Thus, we find the general division of the trial court was not the proper court to litigate Mullins' claims once Barber was appointed her guardian. When the probate court established the guardianship and the plaintiff changed from Mullins, through her attorneys in fact, to Barber, in her capacity as Mullins'

guardian, the nature of the complaint changed. Indeed, the landscape of the litigation changed. There was suddenly a guardianship and a ward's estate. The complaint sought to recover money and assets on Mullins' behalf – it sought to recover assets and return them to the ward's estate. The new factual scenario made the complaint "touch upon the guardianship" and brought the action within the probate court's exclusive jurisdiction. Accordingly, the general division of the trial court should have transferred the case to the probate court per Civ.R. 73(B).

{¶22} Therefore, we sustain Appellants' first assignment of error and vacate the trial court's judgment and remand the case for proceedings consistent with this opinion. Appellants' remaining assignments of error are overruled as moot.

**JUDGMENT VACATED AND CAUSE REMANDED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE VACATED AND CAUSE REMANDED and that the Appellants recover of Appellee costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**