[Cite as *In re Estate of Rotilio*, 2013-Ohio-2878.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 11 BE 9 |
| | ) | |
| ESTATE OF VIGO J. ROTILIO | ) | |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
Pleas, Probate Division, of Belmont
County, Ohio
Case No. 10 ES 476

JUDGMENT:                                     Affirmed in part. Reversed in part.
Remanded.

APPEARANCES:

For Estate of Vigo J. Rotilio and           Atty. John A. Vavra
Michael V. Rotilio, Individually:           132 West Main Street
                                            St. Clairsville, Ohio  43950


For Patty J. Rotilio:                        Patty J. Rotilio, Pro Se
                                            129 Wagner Avenue
                                            Bellaire, Ohio  43906



JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                                            Dated:  June 24, 2013

WAITE, J.

{¶1} Appellant, Patty J. Rotilio, cared for her ailing parents. After her mother's death, her father had a stroke and upon his recovery executed a power of attorney to allow her to take certain actions regarding his property, among other things. While her father was hospitalized in 2009, Appellant transferred three parcels of her father's land. The first two she transferred to herself and her father with survivorship rights, the third she transferred to herself and her brother, Michael V. Rotilio, Appellee, also with survivorship rights. She and her brother are their father's only heirs. Appellant executed the transfers before her father died intestate. Appellant's brother was appointed administrator of the estate. Appellee, as the administrator of the estate and in his individual capacity, filed a complaint for recovery of assets under R.C. 2109.50 against Appellant. After a hearing, the probate court invalidated the transfers, found Appellant guilty, ordered the return of the land to the estate, and imposed a 10% penalty and attorney's fees on Appellant using authority found in R.C. 2109.52.

{¶2} Ohio Revised Code section 2109.50, by its terms, does not apply to real property. Application of this section was not proper in this instance. Although the probate court does have the power under other statutes to invalidate the transfers and return the property to the estate, the 10% penalty and attorney's fees should not have been assessed against Appellant. The probate court's judgment is reversed in part and the matter remanded for further proceedings.

Factual and Procedural History

**{¶3}**    At some point in 2006, Vigo J. Rotilio had a stroke.  Due to his inability to fully care for himself, he executed a durable general power of attorney on February 21, 2006, listing first his daughter and then his son, and giving both of them the ability to take care of his needs.  The power of attorney was broad and allowed his children to address both medical and financial needs, including the transfer of real estate.  His daughter, Appellant, Patty J. Rotilio, appears to have then assumed sole responsibility for the care of her father.  She lived with him at his Wagner Ave. property, routinely signed documents for him, and assisted with his medical care.  At the time the power of attorney was executed, Appellant had been living with her parents for at least a decade.  According to her testimony, in December of 2008, Appellant asked her brother to attend a financial planning seminar with her to learn about options for the management of their father's property if he required additional or different medical services through Medicare.  (Tr., pp. 19-20.)  Appellant and her brother attended the seminar, but apparently did not discuss further estate planning until July of 2009.  According to Appellant, in July of 2009 she reminded her brother about the seminar and that if their father had "too much" property in his name he would not quality for Medicare and that the laws pertaining to Medicare included a five-year look back period for property transfers.  (Tr., p. 20.)

**{¶4}**    On July 20, 2009, Appellant transferred the Wagner Ave. property to her father and herself by general warranty deed with survivorship rights.  According to Appellant's testimony at the probate court hearing on the complaint for concealment of estate assets subsequently filed by her brother, her brother was at

the meeting with the attorney for the execution of transfer, but left angrily part way through the meeting. (Tr., pp. 16-17.) On July 22, 2009 Appellant transferred a second parcel of her father's property, Winding Hill, to herself and her brother, her father's only surviving heirs, with survivorship rights. There appear to be other properties owned by Mr. Rotilio which were not transferred on either date, and devolved to the estate. (Tr., p. 27.) Mr. Rotilio was not present during either of the 2009 transfers, because he was hospitalized. On July 24, 2009 Mr. Rotilio died intestate.

{¶5} According to Appellee Michael Rotilio, he did attend the seminar. Appellee testified that there was no discussion of estate planning between the siblings post-seminar, until he got a phone call from Appellant asking him to come to a lawyer's office in early July so that they could transfer the various properties out of their father's name. (Tr., p. 28.) According to Appellee, Appellant wanted to transfer all the properties into her name. Rather than allow this, Appellee asked that the Winding Hill property be transferred into his name only. Appellee maintained that he only wanted the Winding Hill property "which I have taken care of for the last ten to fifteen years." (Tr., p. 26.) When Appellant would not agree to transfer the Winding Hill property solely to him, Appellee refused to sign anything and, although the lawyer told them they needed to settle the transfers between them, he left the office. Appellee wanted the Winding Hill property, which adjoins his own property, even though Appellant has a mobile home located on this property. According to Appellee, there is also a house on the Winding Hill property that is falling apart and needs to be razed. Appellee testified that he did not learn that his sister had completed the two

July, 2009 transfers of their father's property until April of 2010 when he looked "on line at the property taxes." (Tr., pp. 29-30.)

**{¶6}** On October 5, 2010 Appellee filed an application to be appointed as administrator of his father's estate. According to the application the deceased died intestate with two surviving children, Appellee and Appellant, his sister. Appellant was notified of a hearing on the application for appointment and did not contest the appointment. Appellee was appointed administrator of the estate on October 29, 2010. On December 29, 2010 he filed a complaint against his sister for embezzlement, concealing, or conveying assets of the estate, in both his personal capacity and as administrator of the estate.

**{¶7}** A hearing on the complaint was held on February 25, 2011. At the conclusion of the hearing, the probate court verbally stated that: "Patty J. Rotilio did convey, improperly, assets belonging to the estate through an improper use of a power of attorney which did not contain a provision allowing self-dealing, and even if it did, the Court would question the reliability of that manner of transfer." (Tr., p. 33.)

Argument and Law

**{¶8}** R.C. 2109.50 allows any person "interested in the estate" to file in the probate court with jurisdiction over the estate a complaint seeking the return of any "moneys, chattels, or choses in action," believed to belong to the estate that the claimant suspects to have been "concealed, embezzled, or conveyed away" by the individual named in the complaint. (The statute was amended, effective, January 13, 2012, to substitute "personal property" for "chattels," the two terms are interchangeable.)

{¶9}    "Chose in action" is defined as "a proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort." *Pilkington N. Am., Inc. v Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶19 citing *Black's Law Dictionary* 258 (8th Ed.2004).  While the Ohio Supreme Court "has recognized that the phrase applies to the right to bring an action in tort and in contract" the Court has "never addressed the question of when a chose in action becomes an enforceable right."  A chose in action does not, however, include real property.  It is "personalty which, unlike real property, passes on death to the holder's executor." *Id.* at ¶20-21.  Hence, R.C. 2109.50 is designed to facilitate the recovery of portable objects, fungible goods and money, quickly and across county lines, when necessary.  When such a complaint is filed the court is required to compel the individual named in the complaint to appear in court and be examined under oath concerning the subject matter of the complaint.

{¶10} Once a hearing is held, if the individual identified in the complaint is found guilty, then section 2109.52, titled "[j]udgment on the complaint," requires the probate court to render judgment for the amount of the money or the value of the personal property concealed, embezzled, conveyed away or held in possession, assess damages, or order the return of the item or restoration in kind.  The statute also allows assessment of a ten percent penalty, the amount of which is determined by the value of the goods to be returned, the restitution, or the amount of damages found by the court.  In order for a person to be found guilty under this section and have the penalty and costs assessed, a majority of Ohio districts have found that the violation must involve "wrongful or culpable conduct on the part of the person

accused." *Longworth v. Childers*, 180 Ohio App.3d 162, 2008-Ohio-4927, 904 N.E.2d 904, ¶20, quoting *Ukrainiec v. Batz*, 24 Ohio App.3d 200, 202, 493 N.E.2d 1368 (9th Dist.1982). Wrongdoing or culpability is necessary because:

> R.C. 2109.50 is a quasi-criminal statute. It requires a finding of guilty or not guilty and mandates that certain sanctions be imposed on a guilty defendant, including assessment of a ten percent penalty. See R.C. 2109.52. Thus, to prove concealment, complainant must show more than possession of estate assets. If such were the only proof necessary, all questions of disputed title could be brought under the concealment statute thereby making the statutory provisions for declaratory judgment (R.C. 2721.05) and exceptions to the inventory (R.C. 2109.33) superfluous. Further, the estate would be enriched by ten percent of each claim however innocent the possession.

*Ukrainiec* at 202. If the court finds the party guilty, the total monetary value of a judgment rendered under this section is to be reduced by the value of any goods specifically restored or returned in kind. Even though the value of the judgment is thus reduced, the total amount of the judgment, including penalty and costs (which include attorney's fees) would not be satisfied by merely restoring the goods. Penalty and costs are not cancelled by the restoration of the goods. The probate court ordered both restoration of the properties to the estate and also ordered that Appellant be assessed a ten percent penalty and pay court costs and attorney's fees.

{¶11} A probate court is a court of limited jurisdiction and "probate proceedings are restricted to those actions permitted by statute and by the Constitution." *State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.*, 74 Ohio St.3d 19, 22, 655 N.E.2d 1303 (1995). A probate court does have the authority under R.C. 2109.50 and 2109.52 "to recover certain assets wrongfully concealed, embezzled, or conveyed away before the creation of the estate." (Emphasis omitted.) *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶33. But the court's power to invalidate an *inter vivos* transfer of property is not limited by R.C. 2109.50 and .52; a probate court may do so in a declaratory action, and such actions are properly brought in probate court to facilitate the settling of an estate by resolving "as many issues as is possible in a single proceeding." *Id.* at ¶36, *Lipinski* at 22 ("a declaratory judgment may be brought in the probate court to determine the validity of *inter vivos* transfers where the property transferred would revert to the estate if the transfers are invalidated"). In addition to actions seeking declaratory judgments, parties may also bring suit for the fraudulent conveyance of real estate and seek to invalidate the transfer in this manner. It is clear that probate courts have both the ability to invalidate *inter vivos* transfers and the ability to determine whether real estate is part of an estate. However, it is equally clear that a probate court may not do so under R.C. 2109.50 and .52, which explicitly limit the remedies and required penalties to "moneys, chattels [personal property], and choses in action" and does not apply to "real property," "interests in land," "real estate" or any other formulation that would cover the transactions complained of by Appellee.

{¶12} Our review of cases relying on R.C. 2109.50 and .52 reveal numerous instances involving bank accounts, stock certificates, annuities, and, occasionally, the monetary proceeds of a sale of real estate. Only *Fox v. Stockmaster*, 3rd Dist. Nos. 13-01-37, 13-01-35, 2002-Ohio-2824, and *In re Estate of Holmes*, 8th Dist. No. 62749, 1993 WL 204572 (June 10, 1993), address real property, however R.C. 2109.50 is not applied in either case to resolve the disposition of the real estate concerned. In *Fox*, the causes of action included fraud perpetrated on the decedent, fraudulent transfer of real estate, conversion of the decedent's assets, and tortious interference with a right to inherit, among other things. In a twenty-nine page opinion, the trial court ultimately voided a purchase option agreement, voided trust amendments, reformed a warranty deed, ordered payment of attorney's fees, and found the defendant guilty of concealment of assets. The culpable behavior that led to the decision continued over many years and involved making decedent a virtual prisoner in his own home and requiring him to sign his assets over to his caretakers. The portion of the opinion that addressed the actual transfer of real estate did not rely on R.C.2109.50. This section was instead used to resolve the issue of funds improperly withdrawn from a trust.

{¶13} In *Holmes* the probate court initially dismissed a concealment suit that identified both real estate and personal property, because the real property did not belong to the estate, but did not hold the hearing required by R.C. 2109.50 as to the personal property. The appellate court affirmed the dismissal as to the realty and remanded for a hearing on the personal property. The court did not address the applicability of R.C. 2109.50 to the real property in this instance because it was not

an estate asset. Neither of these cases supports the application of R.C. 2109.50 to cases involving real property.

{¶14} In the matter before us, the conveyances identified in the complaint involved only real property, not accounts, stock certificates or other personal property, choses in action, or the proceeds of the sale of real estate. The transfers were made by Appellant pursuant to a valid power of attorney that allowed for real estate transactions. The actual transfers were made to Appellant, the decedent, and Appellee. Appellee testified that he knew Appellant intended to make the transfers; his objection was not to the transfers themselves, but to the fact that she did not intend to transfer property solely to him, as he preferred. Appellee also indicated that he became aware of the transfers because of publicly available information on the county website. These facts reflect none of the concealment or transportation issues R.C. 2109.50 is designed to address. The obvious difference between cases concerning disposal of real property and those discussing fungible goods is clearly the reason that multiple code sections were enacted to redress the improper transfer of different types of property.

{¶15} According to the record, Appellant did not seek to sell the property for her own benefit or otherwise dispose of it. The transaction itself was not concealed and was apparently recorded and publicly available for review. It is also apparent from the record that the power of attorney did not authorize self-dealing, and the transactions appear invalid due to Appellant's fiduciary relationship to the decedent. Under these circumstances, Appellee had remedies pursuant to R.C. 2101.24(A)(1)(l) or 2721.03, among others and should have filed his complaint under one of these,

more appropriate sections. That said, the probate court did have the power to invalidate the transfers and redistribute the property, but not by means of R.C. 2109.50, which does not apply to real property.

{¶16} Based on the record before us, we affirm the trial court's decision to require Appellant to restore the real property to the estate. It was, however, error to apply R.C. 2109.52 to this proceeding, and we reverse the trial court's imposition of a penalty and costs pursuant to this section. Because the matter originated due to the necessity to settle an estate, this matter must be returned to the probate court for purposes of distribution of that estate.

{¶17} We must at this juncture note that Appellee's decision to proceed under R.C. 2109.50 rather than the more appropriate statutes available was both inappropriate and unnecessarily punitive. Appellee's decision to pursue personally and as administrator what he evidently believed to be the harshest possible remedy, rather than the best available means, to resolve this familial dispute should generally be viewed with extreme disfavor. Similarly, the parties' apparent reluctance to resolve these proceedings outside of an adversarial setting is disappointing.

{¶18} Both parties in this matter have engaged in behavior that serves only to unnecessarily diminish the value of their shared inheritance. As this Court indicated during oral argument, where, as here, parties have equal rights to the property left by their father, the simplest, best, and most cost-effective method of resolution is an agreement between the parties. The parties are the decedent's only heirs; neither has an advantage over the other in their claims to the property. Both parties have squandered an opportunity to reach a mutually beneficial agreement that would allow

them to divide the property between them according to their interests, instead of by court order and existing boundary lines.

Conclusion

**{¶19}** The probate court possessed the power to order that the real property in question was an estate asset, and we affirm the decision to order these three parcels be returned to the estate. However, R.C. 2109.50 does not provide a cause of action to recover real property. The judgment of the probate court under R.C. 2109.50 to assess a penalty and costs to Appellant is vacated. The matter is hereby remanded to the court to determine distribution between the heirs. Any future judgment by the probate court must credit Appellant for any payment of property taxes assessed on the disputed property after her father's death. Judgment of the trial court is affirmed in part and reversed in part and the matter remanded for further proceedings in accordance with this decision.

Vukovich, J., concurs.

DeGenaro, P.J., concurs in judgment only.