[Cite as *In re Estate of Ohman*, 2023-Ohio-4008.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re Estate of Kaylene Ohman | Court of Appeals No.  S-22-015

Evalie Brockway, Administrator | Trial Court No.  20191033A

      Appellee

v.

Robert Ridoutt, et al. | **DECISION AND JUDGMENT**

      Appellant | Decided:  November 3, 2023

* * * * *

Jamie J. Beres, for appellee.

Jennifer L Antonini, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Sandusky County Court of

Common Pleas, Probate Division, which overruled three objections to the magistrate's

decision on an amended complaint under R.C. 2117.12 and R.C. 2109.50.  For the

reasons set forth below, this court affirms the judgment of the trial court.

## I.  Background

{¶ 2} The following chronology of events are relevant in this appeal.  Gail Ina Ridoutt and her husband, Robert Dale Ridoutt, were friends of Kaylene Ohman through their mutual church, the Church of Jesus Christ of Latter-Day Saints in Fremont, Sandusky County, Ohio.  In 2012, an attorney, who was the branch president of their mutual church and the Ridoutt's son-in-law, prepared a last will and testament signed by Ms. Ohman in which she named Mr. and Mrs. Ridoutt as her joint personal representatives/executors.  Ms. Ohman, who lived in Fremont, was unmarried and without children.

{¶ 3} Ms. Ohman died on March 5, 2016, survived by four siblings, one of whom has since passed away.  Mrs. Ridoutt notified the siblings, including Evalie Brockway, Ms. Ohman's sister, of Ms. Ohman's death. Ms. Ohman's landlord gave the Ridoutts up to ten days to vacate Ms. Ohman's apartment.  The Ridoutts placed most of Ms. Ohman's personal property owned at death in a locked storage unit.  The personal property not found in the storage unit is the main subject of this litigation.

{¶ 4} On March 11, Mrs. Brockway sought access to Ms. Ohman's apartment, which the Ridoutts denied.  Mrs. Brockway then contacted the local police, who investigated and determined that the Ridoutts had proper authority from the decedent.

{¶ 5} On April 6, Mrs. Ridoutt obtained from a local jeweler an estate appraisal for 19 items of Ms. Ohman's jewelry, which totaled $1,922.00.

2.

{¶ 6} On June 9, Mr. Ridoutt admitted Ms. Ohman's will to the probate court and filed an application to relieve the estate from administration pursuant to R.C. 2113.03(A)(1), because its assets were less than $35,000. Mr. Ridoutt's application was withdrawn on December 29, through a negotiated consent judgment entry between Mrs. Brockway and the Ridoutts. Additional actions under the consent judgment entry included Mrs. Ridoutt's disclaimer as beneficiary under Ms. Ohman's will and her resignation as an executor named in the will, both retroactive to July 18, and included Mr. Ridoutt's resignation as an executor named in the will, retroactive to July 19.

{¶ 7} Then on April 10, 2017, the probate court appointed Mrs. Brockway as the administrator of Ms. Ohman's estate, the personal property of which Mrs. Brockway at the time believed was worth about two-hundred dollars. On July 13, Mrs. Brockway filed an accounting with the probate court for the $633 appraised value of the storage unit contents. The volume of jewelry itemized in the appraisal comprised about $275.00 of that appraised value and was described by the probate court as "showing values generally between five and fifteen dollars apiece."

{¶ 8} Mrs. Ridoutt died on September 7, 2018, and on March 4, 2019, the probate court admitted her last will and testament and appointed Mr. Ridoutt as the executor of Mrs. Ridoutt's estate.

{¶ 9} In March 2019, as administrator of Ms. Ohman's estate, Mrs. Brockway (hereafter "appellee") filed by affidavit an $80,000 claim against Mrs. Ridoutt's estate,

3.

comprised of two parts: (1) on May 16, 2012, Mrs. Ridoutt changed Mrs. Ohman's life insurance beneficiary designation to herself and received $10,000 from the insurance company on April 15, 2016; and (2) after Mrs. Ohman's death, Mrs. Ridoutt caused the removal of Mrs. Ohman's personal property in the amount of $70,000. Attached to the claim was appellee's list of 53 lines describing the missing personal property,[1] but without any indication of their values. On May 29, appellee received the following response: "Now comes Executor, Robert Ridoutt, by and through counsel and hereby rejects your claim presented on March 1, 2019.[2] Please be advised that your claim, in the amount of $80,000.00 is rejected in toto, under the provisions of R.C. 2117.11."

{¶ 10} On January 29, 2020, appellee filed an amended complaint[3] against defendants Robert Ridoutt, individually, as Executor of the Estate of Gail Ina Ridoutt, and as Trustee of the Ridoutt Living Trust dated February 23, 2018; Amy Wylykanowitz;

---

[1] Among the miscellaneous items such as bed pillows, pillow cases, and laundry basket, potentially relevant are four lines of jewelry items: "Grandma's wedding ring"; "thousands of pieces of Jewelry (Pearls, emeralds, jade, diamonds, gold rings and necklaces, previous stones, turquoise necklace, costume jewelry, etc.)"; "wrist watches"; and "rings on fingers, necklace and bracelets at time of death."

[2] "March 1" appears to be a scrivener error, as appellants admitted in their answer to the subsequent amended complaint the allegation that appellee filed the claim against Mrs. Ridoutt's estate on March 5, which is the day after Mr. Ridoutt's appointment as the estate's executor on March 4.

[3] On December 23, 2019, the probate court granted appellee leave to amend her original complaint, filed on May 26, 2019, to clarify her intent to state a separate cause of action under R.C. 2109.50.

4.

Emily Householder; and Allison Gatt. Wylykanowitz, Householder, and Gatt are the adult children of Mr. and Mrs. Ridoutt. Appellee alleged that the Ridoutt Living Trust was the sole beneficiary of Mrs. Ridoutt's will, and that Mr. Ridoutt and the three adult children are beneficiaries of the Ridoutt Living Trust. In addition to alleging the defendants improperly rejected the claim pursuant to R.C. 2117.12, appellee alleged the defendants violated R.C. 2109.50 by unlawfully possessing, concealing or conveying away tangible personal property and insurance proceeds of the estate totaling $80,000. The defendants generally denied the allegations of wrongdoing, asserted all actions taken or not taken were done in good faith, and asserted various affirmative defenses. Thereafter, the parties engaged in discovery and in settlement discussions, but with no resolution.

{¶ 11} The probate court magistrate held a two-day hearing on appellee's amended complaint and filed the decision on June 30, 2021, which the probate court adopted on July 9, pursuant to Civ.R. 53(D)(4)(b). As journalized on July 12, the magistrate's decision determined a number of relevant findings.

{¶ 12} First, although nominated in Ms. Ohman's will, Mr. and Mrs. Ridoutt were never formally appointed by the probate court as executors of Ms. Ohman's estate, yet "acted in all respects as if they had in fact already been appointed as Executors."

{¶ 13} Second, Mr. and Mrs. Ridoutt took possession of, and control of, the personal property of Ms. Ohman shortly after her death, all of which they believed had no

5.

significant value. They took such actions "because the apartment needed to be vacated." They placed some belongings in storage, gave some items away to Ms. Ohman's friends, to their friends, to a charity, "and lost track of some belongings." The appraised value of the contents of personal property in the storage unit totaled $633.00, and "[w]hen those items were sold at auction, they brought in only half that amount."

{¶ 14} The Ridoutts took some jewelry to a jeweler for appraisal, all of which is now missing. The appraised value of the missing jewelry is $1922.00, which, even when combined with the jewelry items from the storage unit, the magistrate found Ms. Ohman's jewelry overall "was not extraordinary or reflective of fine, expensive jewelry." The magistrate further found the missing jewelry "admittedly was lost or otherwise improperly disposed of by Gail and or Robert Ridoutt."

{¶ 15} Third, appellee failed to establish the $10,000 life insurance policy, which named Mrs. Ridoutt as beneficiary, "should have been an asset of the Estate of Kaylene Ohman."

{¶ 16} Fourth, Mr. Ridoutt, as executor of Mrs. Ridoutt's estate, "has discretion to deny any claim presented under [R.C. 2117.11 and 2117.12]."

{¶ 17} Fifth, for purposes of R.C. 2109.50, the magistrate determined appellee established by a preponderance of the evidence that Mr. and Mrs. Ridoutt, prior to Mrs. Ridoutt's death, took possession of Ms. Ohman's jewelry after Ms. Ohman's death and "conveyed some of it away, improperly and without legal authority." The magistrate

6.

found Mr. Ridoutt guilty pursuant to R.C. 2109.52, but found his three adult children not guilty. The magistrate recommended entry of judgment against Mr. Ridoutt as follows: (1) order Mr. Ridoutt to return to Ms. Ohman's estate within 30 days "one large Jesus statue," "scarves," "any jewelry," "and other personal property formerly the property of Kaylene Ohman" that Mr. Ridoutt "is able to retrieve from persons to whom such were distributed improperly"; (2) order Mr. Ridoutt to pay Ms. Ohman's estate $1,922.00 for the missing jewelry, plus a ten percent penalty of $192.20; (3) order Mr. Ridoutt to pay Ms. Ohman's estate court costs; and (4) order Mr. Ridoutt to pay Ms. Ohman's estate attorney's fees of $11,566.56 because "Robert Ridoutt's conduct of failing to properly safeguard the personal property of Kaylene Ohman, of losing some of the jewelry, and of distributing items of personal property to persons named in the Will and persons not named in the Will, all without legal authority, warrants the imposition of the penalty to pay reasonable attorneys fees to the Plaintiff."

{¶ 18} Also reflected in the magistrate's decision is the following: "The parties stipulated that the trial was to be conducted in accordance with ordinary civil rules for procedure and that special procedural requirements of the statute were waived."

{¶ 19} Mr. Ridoutt timely filed objections on July 23, 2021, to the magistrate's decision, which appellee opposed. Mr. Ridoutt argued three grounds for his objections. First, the guilty finding under R.C. 2019.50 was improper as it penalized him for taking the good faith, logical steps, as an executor under Ms. Ohman's will, to clear out Ms.

7.

Ohman's apartment when the magistrate acknowledged the apartment needed to be vacated in a timely fashion after her death. Second, the order to pay $1,922.00 plus $192.20 penalty plus court costs for the missing jewelry was improper as his wife "placed it with a reputable jeweler for appraisal and safekeeping" and there is no evidence in the record that he took back any of the missing jewelry. Third, the order to pay $11,566.56 in appellee's attorney's fees violates the "lodestar" factors for determining the reasonableness of such fees, particularly the factor for the amount involved and the results obtained by the estate, which is less than $2,000. Attached to Mr. Ridoutt's objection were 20 marked exhibits, presumably from the hearing.

{¶ 20} In response, appellee opposed Mr. Ridoutt's objections because Mr. Ridoutt's mishandling of the estate's assets deprived the estate from satisfying at least a portion of the creditors. Appellee argued that Mr. Ridoutt refused to return to the estate the large Jesus statue in his possession and the scarves and jewelry and other items which others possessed because of his actions. Finally, appellee argued her attorney's fees are reasonable for the number of hours expended on the case multiplied by the $100 hourly fee, subject to lodestar factors, which are in appellee's favor.

{¶ 21} On May 9, 2022, the probate court entered its judgment overruling those objections. The probate court determine that due to Mr. Ridoutt's failure to support his objections to the magistrate's decision under Civ.R. 53(D)(3)(b)(iii), "the Court is unable to independently ascertain if the Magistrate has properly determined the factual issues;

8.

and, as such, is bound by the 45 enumerated findings within the Magistrate's Decision," pursuant to Civ.R. 53(D)(4)(d). Civ.R. 53(D)(3)(b)(iii) relevantly states, "An objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections[.]"

{¶ 22} The probate court then undertook "an independent review of the application of the law, to the facts as found by the Magistrate, via a review of the Court's file and all pleadings, exhibits, and information contained therein." Civ.R. 53(D)(4)(d) states that upon timely filed objections to a magistrate's decision, the probate court must rule on the objections after "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." This "independent review" is a de novo review by the probate court. *Brancatto v. Boersma*, 6th Dist. Lucas No. L-12-1271, 2013-Ohio-3052, ¶ 8.

{¶ 23} The probate court determined, "Upon review, it is clear that the Defendant, Robert Ridoutt, exerted control over estate assets, without appropriately safeguarding those items. Additionally, it is without dispute that the Defendant also distributed items of the estate, without proper legal authority, while not being able to account for other items at all." The probate court made further decisions: (1) denied Mr. Ridoutt's objections to the magistrate's decision, (2) denied appellee's amended complaint on

9.

rejected claim, (3) found Mr. Ridoutt guilty of possessing and carrying away personal property belonging to Ms. Ohman's estate in violation of R.C. 2109.50, (4) found the three adult children not guilty of violating R.C. 2109.50, (5) ordered Mr. Ridoutt to return to Ms. Ohman's estate all personal property formerly belonging to Ms. Ohman "that he is reasonably able to retrieve from persons to whom same was distributed to by himself or Gail Ridoutt," and (6) entered judgment against Robert Ridoutt in the amount of $1,922, plus a ten percent penalty of $192.20, plus court costs, plus attorney's fees of $11,566.56.

{¶ 24} Only defendant Robert Ridoutt, individually (hereafter "appellant"), timely filed this appeal, setting forth three assignments of error:

1. The lower court erred in finding that the defendant Robert Ridoutt was guilty of concealing or carrying away or otherwise improperly disposing of some of the personal property of the decedent Kaylene Ohman, in violation of the provisions of R.C. 2109.50.

2. The lower court erred in finding that the appellant should be ordered to pay the sum of $1,922.00, plus court costs and costs of ten percent for the missing jewelry owned by the decedent.

3. The lower court erred in ordering the defendant to pay plaintiff's attorney fees.

10.

## II. Objections to Magistrate's Decision

**{¶ 25}** Appellant's three assignments of error are identical to his objections to the magistrate's findings of fact and legal conclusions, as required by Civ.R. 53(D)(3)(b)(iv). Objections to a magistrate's decision are governed by Civ.R. 53(D)(3)(b), and the probate court's judgment denying those objections are governed by Civ.R. 53(D)(4).

**{¶ 26}** However, we must first determine if the parties' agreement that the rules of civil procedure, such as Civ.R. 53, properly apply to R.C. 2109.50, a special statutory proceeding, because "[t]he Civil Rules do not apply to special statutory proceedings 'to the extent that they would by their nature be clearly inapplicable.'" *State ex rel. Yeagley v. Harden*, 68 Ohio St.3d 136, 137, 624 N.E.2d 702 (1993), quoting Civ.R. 1(C)(7). As discussed below, we find that Civ.R. 53 is not "clearly inapplicable" because it does not alter the basic statutory purpose for which the special R.C. 2109.50 procedure was originally provided. *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 24; *see State v. Harmon*, 2017-Ohio-320, 72 N.E.3d 704, ¶ 35 (5th Dist.) (surveying appellate districts where the rules of civil procedure generally governed R.C. 2109.50 proceedings).

## A. R.C. 2109.50 Special Proceeding

**{¶ 27}** "'Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). "An R.C. 2109.50 proceeding for the discovery of

concealed or embezzled assets of an estate is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there." *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 23, citing *In re Fife's Estate*, 164 Ohio St. 449, 132 N.E.2d 185 (1956), paragraphs one and two of the syllabus.

{¶ 28} "R.C. 2109.50 permits the filing of a complaint in the probate court of the county having jurisdiction of the administration of a trust estate 'against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate,' to aid in the discovery and recovery of assets." *Disciplinary Counsel v. Shaw*, 126 Ohio St.3d 494, 2010-Ohio-4412, 935 N.E.2d 405, ¶ 12, fn. 3, quoting R.C. 2109.50. The statute authorizes any "person interested in the estate" to initiate the special proceeding, and the "probate court shall promptly proceed to hear and determine the matter" after first "by citation or other judicial order compel the person or persons suspected to appear before it to be examined, on oath, touching the matter of the complaint." R.C. 2109.50.

{¶ 29} The R.C. 2109.50 special proceeding is quasi-criminal in nature because R.C. 2109.52 requires a finding of "guilty" or "not guilty" with the imposition of a penalty upon the finding of "guilty." *In re Fife's Estate* at 453. Civ.R. 2109.52 states:

> When passing on a complaint made under [R.C. 2109.50], the probate court shall determine * * * whether the person accused is guilty of

12.

having concealed, embezzled, conveyed away, or been in the possession of

moneys, personal property, or choses in action of the estate * * *. If the

person is found guilty, the probate court shall assess the amount of damages

to be recovered or the court may order the return of the specific thing

concealed or embezzled or may order restoration in kind."

{¶ 30} As a quasi-criminal special proceeding, the procedure under R.C. 2109.50

"is not intended to be a substitute for a *civil action* to recover a judgment for money

owing to an administrator." (Emphasis sic.). *State ex rel. Goldberg v. Mahoning Cty.*

*Prob. Court*, 93 Ohio St.3d 160, 164, 753 N.E.2d 192 (2001).

## B. Standard of Review

{¶ 31} Having determined Civ.R. 53 applies to an R.C. 2109.50 special

proceeding, we next review for an abuse of discretion the probate court's judgment

denying appellant's objections to the magistrate's decision. *Marlowe v. Marlowe*, 6th

Dist. Wood No. WD-22-063, 2023-Ohio-1417, ¶ 133. "Abuse of discretion means that

the [probate] court's decision was unreasonable, arbitrary, or unconscionable." *Id.* In

determining whether the probate court abused its discretion, we presume its factual

findings were correct and will not reverse a particular factual determination unless it is

against the manifest weight of the evidence; that is, unless a particular factual

determination is not supported by some competent, credible evidence in the record. *Id.* at

¶ 134.

13.

## C. Magistrate's Findings of Fact

{¶ 32} It is well-settled that appellant has the duty to provide a transcript for appellate review because appellant "bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Appellant supplemented the record to this court with the transcript of the two-day hearing. This is problematic because the probate court did not have that transcript before it when it entered judgment after waiting nine months from the filed objections. Under Civ.R. 53(D)(3)(b)(iii), appellant had 30 days, subject to requesting extensions, to support his objections by providing the probate court with either the transcript of the hearing or, if a transcript is not available, an affidavit of the evidence. Instead of taking either action, appellant merely attached 20 marked exhibits[4] to his objections and, confusingly, none of his objections refers to any of the exhibits. The probate court ruled that in the absence of a transcript, it is bound by the magistrate's enumerated findings of fact. We agree and find no abuse of discretion with that decision.

{¶ 33} Appellant's problem with the record carries over to his appeal. App.R. 9(C)(2) clearly states, "If any part of the error assigned on appeal relates to a factual finding, the record on appeal shall include a transcript or affidavit previously filed with the trial court as set forth in Civ.R. 53(D)(3)(b)(iii)[.]" Appellant did not support his

---

[4] The exhibits are marked, "Defendant's Exhibit 1, Brockway, 6-30-20," and "Plaintiff Exhibit A" through "Plaintiff Exhibit T," excluding exhibit No. R.

objections pursuant to Civ.R. 53(D)(3)(b)(iii), and he waives on appeal all but plain error for the magistrate's factual findings. *State ex rel. Pallone v. Ohio Court of Claims*, 143 Ohio St.3d 493, 2015-Ohio-2003, 39 N.E.3d 1220, ¶ 11, citing Civ.R. 53(D)(3)(b)(iv). Appellant does not argue any plain error by the probate court pursuant to Civ.R. 53(D)(3)(b)(iv), and we find appellant failed to demonstrate any exceptional circumstance in the record to warrant application of the plain error doctrine. *Bursiel v. Bursiel*, 6th Dist. Huron No. H-19-015, 2021-Ohio-1548, ¶ 34-35; *State ex rel. Target Auto Repair v. Morales*, 168 Ohio St.3d 88, 2022-Ohio-2062, 195 N.E.3d 1027, ¶ 15.

{¶ 34} Moreover, supplementing the record to this court with the absent hearing transcript "is of no consequence[.]" *State ex rel. Pallone* at ¶ 11, citing App.R. 9(C). "[T]he appellate court is still precluded from reviewing the factual findings. In plain terms, the court of appeals cannot consider evidence that the trial court did not have when it made its decision." *Id.* In the absence of the hearing transcript in the record, we are precluded from reviewing the magistrate's findings of fact in this appeal, and such findings are deemed undisputed.

{¶ 35} We are similarly precluded from reviewing any findings of facts derived from the exhibits admitted into evidence at the hearing. Where no exhibit was properly filed to support appellant's objections to the magistrate's decision, we are limited to the probate court's descriptions of them in its judgment entries. For example, the magistrate's decision does not identify the witnesses who testified, nor identify the

15.

exhibits admitted during the hearing.  At most the decision refers to four exhibits from the hearing: exhibit No. G, photos of storage unit contents; exhibit No. I, appellee's $80,000 claim against Mrs. Ridoutt's estate; exhibit No. L, the $1,922 appraisal for certain now-missing jewelry; and exhibit No. T, appellee's $16,964.56 attorney fees statement.  In turn, the probate court's judgment entry denying appellant's objections to the magistrate's decision references nothing more than the "pleadings, exhibits, and information contained therein."  With no further explanation from the probate court, we are left to speculate if the "exhibits" referenced by the probate court are the same exhibits appellant improperly attached to his objections.  We decline to speculate and find we are precluded from reviewing any findings of facts derived from those exhibits.

{¶ 36} Therefore, relevant to this appeal we find the following determinations by the magistrate are not against the manifest weight of the evidence: (1) "one large Jesus statue," scarves, jewelry, and "other personal property formerly the property of Kaylene Ohman" are assets of Ms. Ohman's estate subject to the R.C. 2109.50 proceeding; and (2) the monetary value collectively assigned to those estate assets was de minimus in relation to the $80,000 amended complaint because, "The preponderance of the evidence only establishes the value of the jewelry [the] Ridoutts took to a jeweler for an appraisal and that was appraised at a value of $1922.00 by Harvey Oaks Jeweler."

{¶ 37} Having established the relevant findings of fact in this appeal, we next address appellant's assignment of errors.

16.

## D. Violation of R.C. 2109.50

{¶ 38} Appellant argues in support of his first assignment of error that the probate court erred when it found he violated R.C. 2109.50. He argues the probate court improperly construed R.C. 2109.50 to "recover assets with little or no value." Citing to *Ukrainiec v. Batz*, 24 Ohio App.3d 200, 202-03, 493 N.E.2d 1368 (9th Dist.1982), appellant argues he and his wife were operating with the good faith belief that they were authorized and responsible for the removal and distribution of Ms. Ohman's personal property, which "was fully accurate." Consequently, appellant argues he is not "guilty" of violating R.C. 2109.50, because, like in *Ukrainiec*, mere possession of estate assets is not enough to be "guilty" of concealment.

{¶ 39} Appellee responds that R.C. 2109.50 is a strict liability statute, citing *In re Estate of Popp*, 94 Ohio App.3d 640, 647, 641 N.E.2d 739 (8th Dist.1994) ("fraudulent or criminal intent is irrelevant" in a proceeding against a financial institution under R.C. 2109.50). "Strict liability" is liability per se and without fault, to which "no defenses or excuses, including lack of notice, are applicable." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 495, 727 N.E.2d 1277 (2000). "Courts generally agree that violation of a statute will not preclude defenses and excuses -- *i.e.,* strict liability -- unless the statute clearly contemplates such a result." *Id.* at 496.

{¶ 40} Neither party is entirely correct. The Ohio Supreme Court has determined that an interested person states an actionable cause under R.C. 2109.50 with a two-prong

17.

test: "'if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it.'" *Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, at ¶ 35, quoting *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 407, 629 N.E.2d 500 (9th Dist.1993). "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Wozniak* at 407.

### 1. Estate Assets

{¶ 41} Appellee met the first prong of the *Maloney* test with the magistrate's factual findings that were then adopted by the probate court: a large Jesus statue, scarves, jewelry, and miscellaneous personal property were assets of Ms. Ohman's estate subject to the R.C. 2109.50 proceedings. Thus, by a preponderance of the evidence, we find competent, credible evidence in the record establishing the estate's ownership of these assets. Only the jewelry appraised by Harvey Oaks Jeweler for $1922.00 is the subject of this appeal.

### 2. Wrongful Conduct

{¶ 42} The second prong of the *Maloney* test is a conclusion of law. Contrary to appellee's strict liability argument, the Ohio Supreme Court holds that "wrongful" conduct towards the estate's assets is required under R.C. 2109.50 and 2109.52. *Maloney* at ¶ 33, citing *Fecteau v. Cleveland Tr. Co.*, 171 Ohio St. 121, 167 N.E.2d 890 (1960).

18.

After an extensive review of appellate court decisions throughout Ohio, the Fifth District Court of Appeals held that, although R.C. 2109.50 and 2109.52 require "wrongful, fraudulent, or criminal *conduct* * * *, criminal *intent* is not always required[.]" (Emphasis sic.) *Harmon*, 2017-Ohio-320, 72 N.E.3d 704, at ¶ 26. We agree and have so held. *Lindquist v. Hayes*, 22 Ohio App. 141, 144-145, 153 N.E. 297 (6th Dist.1926) (construing predecessor statutes, criminal intent is immaterial and irrelevant where the necessary determinations are if wrongful conduct, then whether the property in question was the decedent's and an asset of and belonging to the decedent's estate). Here, the description of appellant's "wrongful conduct" towards the estate's assets ("losing track" and "without appropriately safeguarding") is tantamount to negligence or bad judgment, but still a violation of R.C. 2109.50.

{¶ 43} Appellant's reliance on *In re Estate of Popp* is too narrow, as that court also distinguished between "wrongful" conduct, which is necessary to invoke the probate court's jurisdiction under R.C. 2109.50, and "criminal intent," which is not necessary to be "guilty" under R.C. 2109.52. *In re Estate of Popp* at 646-47, citing *In re Black's Estate*, 145 Ohio St. 405, 411, 62 N.E.2d 90 (1945). The Ohio Supreme Court explained the distinction: "Undoubtedly such statutes have a useful and proper purpose and should not be too narrowly construed. However, since a finding of guilty or not guilty is required and the imposition of a penalty is mandatory upon a finding of guilty, the statutes should not be extended by implication beyond their manifest purpose, to reach

19.

persons or matters not covered by the descriptive terms of the statutes." *In re Black's Estate* at 411.

**{¶ 44}** Appellant essentially argues his good-faith defense defeats the second prong because he did not act "wrongfully" with his "mere possession" of estate assets, which he distributed in the spirit of Ms. Ohman's wishes. Appellant, however, points neither to the portions of the record, nor to citations to legal authorities, where he had legal authority or other legally-recognized excuse to take the "good-faith" actions he alleges with respect to the estate's assets. App.R. 16(A)(7). For example, despite the magistrate's finding of fact that Ms. Ohman, through her last will and testament, named the Ridoutts as her personal representatives/executors where they acted as if they had been appointed by the probate court, appellant does not argue testamentary authority, if any, to support his good-faith defense. *See Murray v. Carano*, 5th Dist. Ashland No. 17-COA-005, 2017-Ohio-8235, ¶ 43 (evaluating evidence of authority under a power-of-attorney); *see also Mancz v. McHenry*, 2012-Ohio-3285, 974 N.E.2d 784, ¶ 70-71 (2d Dist.), citing *Longworth v. Childers*, 180 Ohio App.3d 162, 2008-Ohio-4927, 904 N.E.2d 904, ¶ 20 (2d Dist.) (evaluating evidence to support an inference of an intent to conceal the estate's money taken and "largely unaccounted for"). We will not speculate on alleged R.C 2109.50 probate court errors regarding his "good faith" defense for him. *Silcott v. Prebble*, 12th Dist. Clermont No. CA2002-04-028, 2003-Ohio-508, ¶ 19.

20.

**{¶ 45}** We do not find that the probate court's attitude was unreasonable, arbitrary or unconscionable when it determined wrongful conduct by appellant towards the estate's assets, which is sufficient for purposes of violating R.C. 2109.50. We do not find the trial court abused its discretion when it overruled appellant's first objection to the magistrate's decision upon a preponderance of the evidence in the record before it.

**{¶ 46}** Appellant's first assignment of error is not well-taken.

## E. Remedies Under R.C. 2109.52

### 1. Money Judgment, Penalty, and Court Costs

**{¶ 47}** In support of his second assignment of error, appellant argues the probate court erred by ordering him to pay damages and a penalty for the missing jewelry. Appellant does not dispute the portion of the probate court's order that he retrieve a large Jesus statue, scarves, jewelry, and miscellaneous personal property and return them to the estate. Once again, appellant essentially argues a good faith defense: the more valuable jewelry was taken to a local jeweler "to secure these items, if they did have value, for the estate." Appellant "believed" the jewelry was still with the local jeweler, "and when he learned it was not there, he searched his own home, thinking perhaps his [now-deceased] wife had picked it up." Appellant concludes, without citation to legal authority, there is no merit to support the probate court's finding that he was responsible for the missing jewelry, which he does not have and the location of which remains "a mystery."

21.

{¶ 48} Appellee responds the probate court properly ordered appellant to pay $1,922 plus ten-percent penalty plus court costs because "he was in possession of an asset he knew to be an asset for an Estate and either his negligence or pure indifference caused the asset to be lost to the estate." Appellee argues that only appellant can be liable to Ms. Ohman's estate for mishandling the missing jewelry belonging to the estate because he is "in privity of contract with Harvey Oaks for the appraisal and return of the fine jewelry and Robert Ridoutt at no point made a police report as to the items being stolen."

{¶ 49} Having found no error with appellant's first assignment of error, we further find no error where the probate court found, upon its de novo review, appellant "guilty" and ordered relief under R.C. 2109.52, which states:

> In all cases, except when the person found guilty is the fiduciary, the probate court shall render judgment in favor of the fiduciary * * * against the person found guilty, for the amount of the moneys or the value of the personal property or choses in action concealed, embezzled, conveyed away, or held in possession, together with ten per cent penalty and all costs of the proceedings or complaint; except that the judgment shall be reduced to the extent of the value of anything specifically restored or returned in kind as provided in this section.

{¶ 50} "R.C. 2109.52 empowers the probate court to conduct a hearing in the concealment proceeding at which the court may determine questions of title concerning

22.

the allegedly concealed, embezzled, or conveyed estate assets, to determine whether the person accused is guilty and, if so, to enter judgment against the person found guilty for the amount of the money or value of assets with a ten percent penalty[.]" *Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, at ¶ 27. Notwithstanding a "guilty" finding, the ten-percent penalty is civil in nature. *Harmon*, 2017-Ohio-320, 72 N.E.3d 704, at ¶ 36. Upon finding appellant "guilty" under R.C. 2109.52, the probate court ordered the same relief recommended by the magistrate: judgment against appellee in the amount of $1,922.00 for the missing jewelry, plus a ten-percent penalty of $192.20, plus unspecified court costs, and the return to Ms. Ohman's estate of all personal property "that he is reasonably able to retrieve from persons to whom same was distributed to by himself or Gail Ridoutt, no later than 30 days after the date of this judgment entry." The probate court also ordered appellant to pay appellee attorney's fees of $11,566.56, which will be discussed below.

{¶ 51} We do not find the trial court abused its discretion when it overruled appellant's second objection to the magistrate's decision upon a preponderance of the evidence in the record before it. We do not find the probate court's attitude was unreasonable, arbitrary or unconscionable when it determined appellant was guilty under R.C. 2109.52, and ordered appellant to pay money damages in the amount of $1,922.00, ten-percent penalty of $192.20, court costs, and to retrieve and return all personal

23.

property of the estate that he can reasonably retrieve from persons to whom same was distributed.

{¶ 52} Appellant's second assignment of error is not well-taken.

### 2. Attorney's Fees

{¶ 53} In support of his third assignment of error, appellant argues the trial court erred in awarding attorney's fees. Appellant argues R.C. 2109.50 "does not provide for an award of attorney fees even upon a guilty determination [under R.C. 2109.52]." Alternatively, appellant argues that even if attorney fees were allowed, the trial court awarded unreasonable fees, contrary to the eight-factor "lodestar method," in particular, the results-obtained factor, citing *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 12. Appellant argues the $11,566.56 attorney's fees award is excessive and warrants a downward adjustment in this case because appellee sought $80,000 in her amended complaint, but was only able to prove, and obtain results for, a fraction of it, or $1,922 for the missing jewelry. Appellant characterizes this litigation as "plaintiff's nuisance case * * * [where] the potential recovery here was never worth the thousands of dollars spent on attorney fees."

{¶ 54} Appellee points to the fact the attorney's fees totaling $16,964.56 were reduced by the magistrate to $11,566.56 in recognition of the work related to bringing the R.C. 2109.50 civil action. Appellee argues the second day of the hearing was devoted to

24.

attorney's fees arguments, and appellant "did not bring into question the reasonableness of fees presented."  Appellee concludes the award of attorney's fees is reasonable at an hourly rate of $100 multiplied by the hours the probate court stated were explicitly related to this litigation and not the general handling of Ms. Ohman's estate.

{¶ 55} We review the probate court's award of attorney's fees for an abuse of discretion.  *Bittner v. Tri-Cnty. Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991); *Phoenix Lighting Group* at paragraph two of the syllabus.  The magistrate recommended that attorney's fees in the amount of $11,566.56 was warranted in this matter as an additional penalty for appellant's failure to "properly safeguard" Ms. Ohman's personal property, "losing some of the jewelry," and, without legal authority, "distributing" Ms. Ohman's personal property.

{¶ 56} The record establishes that the hearing concerning the award of attorney's fees occurred before the magistrate.  Appellant contests the nature and extent of the evidence presented to establish the amount of reasonable attorney fees that were awarded.

{¶ 57} As we have already noted, when appellant filed objections to the magistrate's decision, the trial court was not provided the testimony presented to the magistrate.  Hence, the trial court correctly determined that it was "unable to independently ascertain if the Magistrate has properly determined the factual issues; and as such is bound by the 45 enumerated findings within the Magistrate's decision."  We

25.

decline appellant's invitation to determine that R.C. 2109.50 does not provide for an award of attorney fees or for additional penalties.

{¶ 58} Because the trial court was not provided the testimony presented to the magistrate, we are unable to review that testimony on appeal. Therefore, we must presume that the testimony and evidence presented supported the factual findings of the magistrate, and, consequently, the judgment of the trial court. *See Goodluck v. Chagrin Valley Athletic Club*, 11th Dist. Geauga No. 98-G-2122, 1998 WL 964293 (Dec. 18, 1998). We find no abuse of discretion with respect to the trial court's application of the law to the magistrate's factual findings.

{¶ 59} Accordingly, appellant's third assignment of error is found not well-taken.

### III. Conclusion

{¶ 60} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas, Probate Division, is affirmed.

{¶ 61} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Gene A. Zmuda, J.

_____
JUDGE

_____

Charles E. Sulek, J.           JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.